UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
TOLEDO DIVISION

JOHN A. MARTINEZ,
     Movant,

v.

CIVIL NO. 3:10CV410
[CRIMINAL NO. 3:05CR781]

UNITED STATES OF AMERICA,
     Respondent.
_____ / HONORABLE DAVID A. KATZ

## MEMORANDUM OF LAW IN SUPPORT OF TITLE 28 U.S.C.S. § 2255 MOTION

THE UNDERSIGNED, John A. Martinez ("Mr. Martinez"), in propria persona, submits this Memorandum of Law in Support of his Title 28 U.S.C.S. § 2255 Motion, which alleged 1) that his trial counsel rendered ineffective assistance of counsel (IAC) when counsel failed to inform Mr. Martinez of the option of pleading guilty to his indictment and 2) that his counsel rendered IAC when counsel failed to object to the Pre-sentence Investigation ("PSI") Report's recommendation that a § 3B1.1(a) enhancement be assessed against him or to request a downward variance on the ground that equally, if not more, culpable co-defendants did not receive the same enhancement.

## I. JURISDICTION

This Court has the jurisdiction to vacate, set aside, or correct a sentence that has been imposed in violation of the United States Constitution.  **Title 28 U.S.C.S. § 2255**

## II. JOURNEY OF THE CASE

### A. Procedural Backdrop

On 8 September 2005, a federal grand jury indicted Mr. Martinez, his father, his brother, and several others in a multi-count indictment.  Specifically, it charged Mr. Martinez in the following counts:

#### Count 1

Conspiracy to possess with intent to distribute several controlled substances in violation of Title 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(C), and 846;

#### Count 2

Possession with intent to distribute cocaine on or about 11 December 2002 in violation of Title 21 U.S.C. § 841(a)(1);

#### Count 3

Possession with intent to distribute cocaine base on or about 11 December 2002 in violation of Title 21 U.S.C. § 841(a)(1);

#### Counts 18, 42, and 46

Unlawful use of communication facility in violation of Title 21 U.S.C. § 853.

The day before Mr. Martinez's jury trial commenced, on 3 May 2006, the United States of America ("government") filed a Title 21 U.S.C.S. § 851(a) Notice of Prior Conviction Enhancement against Mr. Martinez.

The next day, on 4 May 2006, Martinez, his father, and his brother proceeded to a jury trial; on 19 May 2006, with the exception of Count 3, the jury found Mr. Martinez guilty of all of the remaining Counts.

On 8 September 2006, this Court sentenced him to a total term of imprisonment of 288 months on Counts 1 and 2 and to 96 months on Counts 18, 42, and 46. This sentence was based on a sentencing guideline calculation as follows:

| | | |
|---|---|---|
| 1) | Base Offense Level § 2D1.1(c)(4)<br>At least 5 KG but less than 15 KG of Cocaine | 32 |
| 2) | Role in the Offense § 3B1.1(a)<br>Leadership/Organizer Enhancement | +4 |
| 3) | TOTAL OFFENSE LEVEL | 36 |

With a criminal history category of III, Mr. Martinez had a sentencing range of 235 to 293 months.

On 20 September 2006, he filed a timely Notice of Appeal; unfortunately, on 3 December 2008, the Sixth Circuit denied his direct appeal.

On 1 May 2010, he filed a timely Title 28 U.S.C.S. § 2255 Motion. This Memorandum of Law is in support of that Motion.

### B. Factual History

### 1. Cooperation Plea Agreement or Plea of Guilty

The facts of this case are not very complex: Mr. Martinez, his father, his brother, and several other, non-related individuals were all indicted for numerous federal drug laws violations. During the pre-trial phase, all of the other individuals entered into extensive cooperation agreements with the government.

3

Mr. Martinez's trial attorney repeatedly told him about the possibility of cooperating with the government, but counsel never actually conveyed a specific plea agreement to Mr. Martinez until right before trial commenced.  Counsel often stated to Mr. Martinez that the government was very interested in any information against Mr. Martinez's father and his brother. Quite frankly, he was never interested in testifying against his family.  Significantly, counsel never advised Mr. Martinez of the option of just pleading guilty to his indictment and fighting the drug quantity and any possible enhancements at sentencing.

Then a day or two prior to trial, in the presence of this Court, a last second plea offer was made.  This Court gave Mr. Martinez, his father, and his brother an opportunity to speak privately with their lawyers.  During this private discussion, the lawyers laid the plea agreement on the table.  The plea agreement consisted of Mr. Martinez and his brother receiving a 15-year sentence and his father receiving a 12-year sentence. After a family discussion, the two sons agreed to plead guilty, but the father refused.

The family and their lawyers returned to the courtroom to make their decision known.  Mr. Martinez's lawyer told the court that his client was willing to accept the government's offer.  Mr. Martinez's brother's attorney told the court the same thing.  Mr. Martinez's father's attorney, however, informed this Court that his client was not interested in pleading guilty.

4

The government's attorney, Joseph Wilson, immediately stated that either all of the Martinezes had to plead guilty or that the plea agreement was off the table. In fact, Mr. Wilson indicated to the senior Martines that if he refused the plea offer, Mr. Wilson would do his best to make sure that the senior Martinez received a life sentence. In the end, the government unilaterally pulled its plea offer off the table as it related to Mr. Martinez.

A day or two later, on 4 May 2006, apparently assisting this Court, Magistrate Judge Vernelis Armstrong had the government to lay out any plea agreements that it had offered. The government stated that it had offered Mr. Martinez 15-year to cooperate against his father and his brother. See Trial Transcripts (Tr. Trans.), 4 May 2006, Vol 1 of 8, P. 10, L. 10-21. The court then asked Mr. Martinez about his statutory maximum and his prospective sentencing guideline range. The court then asked Mr. Martinez if he "wished to accept any plea offer that ha[s] been made in this case" by the government. Id, P.11, L. 1-11. He said, "No." Id. Shortly after that inquiry, jury selection began.

### 2. Co-defendant Plea Agreements

At least as early as 2002, Ricardo Medrano and Brian Summers were obtaining multiply kilograms of cocaine from Alex Serato in Texas. Some time in the Summer of 2002, Mr. Medrano and Mr. Summers met Robert Fleming at a bar thru a friend named

5

Andy Durr. Mr. Durr was purchasing cocaine from Mr. Medrano
and Mr. Summers. Mr. Fleming then began buying cocaine from
them. Shortly after meeting the pair, Mr. Fleming moved into the
Raceway Hotel with them, and he learned that the pair "were moving
kilos of cocaine about ten every two weeks[.]" Tr. Trans.,
Vol 2 of 8, P. 186, L. 20-21. He learned that "[t]hey were
getting them [kilos] from Dallas, Texas, and they had a runner
that was bringing up 10 kilos every two weeks, around that."
Id., P. 187, L. 4-6. Mr. Fleming even learned that Mr. Martinez,
and another guy called Buster, was buying drugs from the pair.

Ultimately, Mr. Medrano assumed a lesser role in the drug
selling operation due to personal problems and, along with Mr.
Summer, Mr. Martinez assumed a slightly greater role in the
operation.

The drug selling operation came to a halt in September
2005 and, as usual, defendants ran to cooperate with the govern-
ment. Specifically, according to trial testimony, Mr. Medrano
signed a plea agreement with the government that only held him
accountable for selling 3.5 - 5 kilograms of cocaine and that
did not provide for any kind of leadership or organizer enhance-
ment. Moreover, based upon information and belief, neither
Mr. Serato nor Mr. Summer received any leadership or organizer
enhancement, even though they, along with Mr. Medrano, established
the drug selling operation long before Mr. Martinez became a
part of it.

6

### III. CLAIMS PRESENTED

#### A. Issue One

Trial counsel rendered IAC when counsel failed to advise Mr. Martinez of the option of pleading guilty to his indictment, thereby violating his Sixth Amendment right.

#### B. Relevant Law

Claims of IAC are governed by the now familiar two-element test set forth by the Supreme Court in **Strickland v. Washington**, **466 U.S. 668, 80 L.Ed. 2d 674 (1984)**. First, a movant must prove that counsel's performance was deficient, which requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." **Id. at 687.** The Court explained that to establish deficient performance, a movant must identify acts that were "outside the wide range of professionally competent assistance." **Id. at 690.** Second, a movant must show that counsel's deficient performance prejudiced the movant. A movant may establish prejudice by "showing that counsel's errors were so serius as to deprive the defendant of a fair trial." **Id. at 687.** Lastly, the "second element of the **Strickland** test in the plea offer context is that there is a reasonable probability the [movant] would have pleaded guilty given competent advice. See **Griffin v. United States**, **330 F.3d 733, 738 (6th Cir. 2003)**(citing **Turner v. Tennessee**, **858 F.2d 1201, 1205 (6th Cir. 1988)**(agreeing with the district court that "an incompetently

7

counseled decision to go to trial appears to fall within the
range of protection appropriately provided by the Sixth Amendment."),
vacated on other grounds, **492 U.S. 902 (1989),** reinstated,
**726 F.Supp. 113 (M.D. Tenn 1989),** aff'd, **940 F.2d 1000 (6th
Cir. 1991).**

### C. Analysis of Issue

### 1. Deficient Performance

Trial counsel's performance fell below an objective standard
of reasonableness when counsel failed to advise Mr. Martinez
of the option of simply pleading guilty to his indictment and
fighting the drug quantity and any leadership/ organizer enhance-
ment. To establish that Mr. Martinez's counsel omission con-
stituted "deficient performance," Mr. Martinez refers to the
following cogent facts.

First, a day or two prior to trial, the government extended
a last-second, 15-year plea agreement to Mr. Martinez and his
brother and a 12-year plea agreement to his father. This plea
agreement required the Martinezes to cooperate. The sons told
their lawyers that they were willing to accept the plea offer,
even though they would never have testified against their father,
but the father rejected the plea offer. As soon as this infor-
mation was conveyed to the government in open court, the govern-
ment unilaterally withdrew the offer from the sons and basically
threaten the father with a life sentence. Again, to be absolutely
frank with this Court, neither Mr. Martinez nor his brother
were interested in providing any information that could have

8

been used against their father,but Mr. Martinez was definitely
willing to plead guilty.  He told his lawyer as much during
their private discussion with his father, his brother, and their
lawyers.  This fact was well known by all involved in the discus-
sion.

Secondly, this case involved three defendants with a very
close familial relationship.  There was a father and his two
sons.  Obviously, Mr. Martinez did not want to say or do anything
that could remotely bring harm to his father or his brother,
especially after the government had threat the father with a
life sentence.  Counsel should have recognized the uniqueness
of this situation and advised Mr. Martinez of the option to
plead guilty to his indictment.

Lastly, as usual with these kind of cases, two fistffull
of co-defendants or co-conspirators had entered into cooperation
agreements with the government to provide testimony against
any one and everyone who dared test the government; therefore,
the evidence of guilty was likely to be overwhelming.  Without
a doubt, the cooperating witness is the reason why the government
is able to boast that it has a 90% plus conviction rate.

In **Smith v. United States**, 348 F.3d 545, 552-53 (6th Cir.
2003), the Sixth Circuit held that an attorney has a clear obli-
gation to fully inform her client of the available options."
It observed that "the failure to convey a plea offer constitutes"
IAC.  **Id.**  It also noted that the "decision to plead guilty -
first, last, and always - rests with the defendant, not his lawyer.
**Id. at 552.**

Now, Mr. Martinez is not claiming that his lawyer failed to advise him of the government's last-second plea offer or that counsel should have advised Mr. Martinez to plead guilty. That decision was -first, last, and always - Mr. Martinez's to make, and he clearly had not intention of cooperating against his father, even though the government unilaterally withdrew its plea offer before he ever had to make that decison. This claim involves counsel's failure to inform Mr. Martinez of the option of simply pleading guilty to his indictment, so he would not have to worry about bringing his father any harm. This was clearly an "available option," of which counsel should have informed Mr. Martinez. **Smith**, **supra, at 552-53.** Mr. Martinez indicated to his lawyer that he was willing to accept the government's 15-year plea offer; Mr. Martinez indicated to his lawyer that he did not want to harm his father in anyway; and Mr. Martinez faced a legion of cooperating witnesses. The "available options" for Mr. Martinez were 1) to proceed to trial; 2) to accept the government's plea offer, or 3) to plead guilty to his indictment. Trial counsel informed Mr. Martinez of two of the three "available options." When counsel omitted the significant option of pleading guilty to the indictment, counsel's performance fell below an objective standard of reasonableness.

Thus, counsel performed deficiently.

## 2. Prejudice

Additionally, but for counsel's omission, the result of
Mr. Martinez's plea negotiation or decision to proceed to trial
would have been differently. **Id.**

To prove this point, Mr. Martinez first points to the fact
that he told his trial attorney that he was willing to accept
the government's last-second plea agreement for a 15-year term
of imprisonment. See **Exhibit A: John A. Martinez Sworn Affidavit**.
The government's attorney, Joseph Wilson, withdrew this offer
when Mr. Martinez's father refused to plead guilty. Due to
the government's unilateral withdrawal of the offer, the govern-
ment's attorney, Eva Dustin, statement at the very beginning
of Mr. Martinez's trial and during his sentencing hearing that
it offered a 15-year plea if he agreed to cooperate is not accurate
at all. The government omitted a very pertinent fact: The offer
had been unilaterally withdrawn from Mr. Martinez because his
father rejected the plea offer. The offer was withdrawn prior
to Mr. Martinez acknowledgment before Magistrate Judge Armstrong
that he was rejecting any offer from the government that might
have required him to testify against his father or his brother.
To the best of his knowledge, that was the only offer extended
by the government.

Secondly, the difference between the sentence that he received
at trial, 288 months, and the sentence he would have received
by pleading guilty to his indictment was substantial. See **Magana
v. Hofbauer**, 263 F.3d 542, 552-53 (6th Cir. 2001)(finding the

difference between a ten- and twenty-year sentence significant).
Had he pled guilty to his indictment shortly after his last,
cooperating co-defendant, excluding his father and his brother
who proceeded to trial, Mr. Martinez's sentencing range would
have been calculated in the following manner:

| | | |
|---|---|---|
| 1) | Base Offense Level § 2D1.1(c)(4) | |
| | At least 5 KG but less than 15 KG of Cocaine | 32 |
| 2) | ADJUSTED OFFENSE LEVEL | 32 |
| 3) | Role in the Offense § 3B1.1(a) | – |
| | Leadership/Organizer Enhancement | -3 |
| 4) | TOTAL OFFENSE LEVEL | 29 |

With a criminal history category of III, Mr. Martinez would
have faced a sentencing range 108 to 135[1] months of imprisonment.[2]
This range is far less than the range he faced after his trial,
that is, 235 to 293[3] months with an 851(a)(1) enhancement for
insurance.  With a guilty plea, the range would have been lower
and there would have been no  851(a)(1) enhancement  because
it was only filed a day or so before trial.  A prompt guilty
plea would have avoided that .

_____

[1]Due to the 10-year mandatory minimum, Mr. Martinez's sen-
tencing range would have actually been 120 to 132 months.

[2]Even if one were to suppose that a § 3B1.1(a) enhancement
were assessed against him, with a § 3E1.1 reduction, Mr. Martinez's
sentencing range would have only been 168 to 210 months.  That
is still less than his current range.

[3]Due to the fact that Mr. Martinez proceeded to trial,
the government filed a 851(a)(1) enhancement a day or two prior
to trial, so his range was actually 240 to 293 months.

Finally, the evidence against Mr. Martinez was quite simply overwhelming.  Mr. Martinez realized this fact and he assumes his attorney knew it.  That is why Mr. Martinez was, in fact, willing to accept the government's plea offer.  People, numerous people, with whom Mr. Martinez had associated with for years were willing to come into a federal courthouse to testify about their alleged dealings with Mr. Martinez; indeed, these people had signed plea agreements to that effect.  See **Boria v. Keane**, **99 F.3d 492, 497 (2nd Cir. 1996)**(finding there was a reasonable probability that a defendant would have accepted a plea offer if his attorney had provided his professional opinion that it was "almost impossible" for a defendant in his position to obtain an acquittal).  One does not have to be particularly perceptive to understand that the chances of an acquittal in the face of such evidence was slim.  Had counsel advised Mr. Martinez of this fact, Mr. Martinez would have pleaded guilty to his indictment.

Thus, but for counsel's omission, Mr. Martinez would have pleaded guilty to his indictment; therefore, trial counsel rendered IAC when counsel failed to advise Mr. Martinez of the option of pleading guilty to his indictment.

### A. Issue Two

Trial counsel rendered IAC when counsel failed to object to the PSI Report's recommendation that Mr. Martinez receive a 3B1.1(a) enhancement or to request a downward variance on

13

the ground that equally, if not more, culpable co-defendants did not receive the same enhancement, thereby violating his Sixth Amendment right.

### B. Relevant Law

**Strickland**, **supra**, governs this issue too.

### C. Analysis of Issue
### 1. Deficient Performance

Trial counsel fell below an objective standard of reasonableness when counsel failed to object to the PSI Report's assessment of a 3B1.1(a) enhancement or to request a downward variance on the ground that equally culpable defendants did not receive the same enhancement.

To get right to the point, the trial evidence showed that Alex Serato provided Ricardo Medrano and Brian Summers with large quantities of cocaine starting at least in early 2002. The drugs were sent from Texas via several carriers. They included Carl Sayle, who would travel to Dallas, Texas to pick up ten kilograms at a time. This was going on prior to Mr. Martinez becoming part of their operations. Mr. Medrano also instructed Robert Fleming to wire numerous thousands of dollars of drug proceeds to Mr. Medrano's family in Mexico, and ( on multiple occasions), Mr. Summer had Mr. Fleming holding drugs for Mr. Summer and Mr. Medrano. Mr. Fleming would also drive for them and sell drugs for them. Basically, Mr. Fleming was Mr. Summer's

and Mr. Medrano's underling.  All of these things were going
on prior to Mr. Martinez alleged involvement in the conspiracy.
However, based upon the trial evidence and a reasonable belief,
Mr. Serato, Mr. Summer, and Mr. Medrano did not received a lead-
ership or organizer enhancement.

Undoubtedly, the government is free to provide a cooperating
witness any type of incentive that it deems is necessary to
procure his/her testimony, and this agreement can serve as a
basis for a sentencing disparity between a defendant who proceeds
to trial and a defendant who cooperates.  See **United States
v. Phinazee**, **515 F.3d 511, 520 (6th Cir. 2008)**(sentencing dis-
parity justified by departures for substantial assistance..
That type of disparity happens daily in federal courts, and
indeed, that serves, partly, as the basis for the disparity
in the instant case.  However, the sentencing disparity in this
case was not driven solely by a difference in criminal histories
or a co-defendant's cooperation. Here, several equally, if not
more, culpable co-defendants did not receive their well-earned
3B1.1 enhancement.  In numerous cases, other attorneys have
often asked a district court to reduce a defendant's sentence
based on the fact that equally culpable defendants did not receive
the same drug quantity or enhancements.  Trial counsel should
have objected to the assessment of the 3B1.1 enhancement on
this ground or (at least) requested a downward variance on this
ground.

In **United States v. Presley**, **547 F.3d 625 (6th Cir. 2008)**,
the Sixth Circuit affirmed a significant downward variance of

240 months.  The **Presley** decision was actually proceeded by **United States v. Davis**, 403 F.3d 345 (6th Cir. 2005).  In **Davis**, appellants Davis and Presley both filed a direct appeal from their judgment of convictions and their 360 month sentences following a trial.  While Davis prevailed on a Fourth Amendment issue and a sentencing issue, **United States v. Booker**, 543 U.S. 220, 160 L.Ed. 2d 621 (2005), Presley's case was only remanded in light of **Booker.**  Once in the district court, the government entered into an agreement with Davis to where his previous 360 month sentence was reduced to only 96 months.  Expectedly, Presley asked for a downward variance of a similar degree as Davis' sentence.  Of course, the government opposed any reduction at all, but the district court granted Presley's request after noting that "co-defendant sentencing disparity" was a permissible factor to consider under Title 18 U.S.C.S. § 3553(a)(6).  The Sixth Circuit emphasized that **Booker** "breathes life into the district court judges to engage in individualized sentencing within reason in applying the § 3553(a) factors to the criminal defendants that come before them." **Presley,** at 632.  Additionally, in **United States v. Graham**, 146 F.3d 6 (1st Cir. 1998), the First Circuit observed approvingly under the then-mandatory guideline regime a district court's two-level downward departure where the appellant's amount of loss was substantially higher than her equally culpable co-defendants who had cooperated with the government. **Graham**, at 11.

In the case sub judice, numerous, equally culpable co-defendants entered into cooperation agreements and were not assessed a 3B1.1(a) enhancement.  Nothing is wrong with that fact.  Mr. Martinez's attorney, however, should have used this fact to opposed the 3B1.1(a) enhancement against Mr. Martinez or to (at least) request a downward variance of some degree.  Mr. Serato was the leader of the operation to sell drugs in Toledo; plus, Mr. Serato, Mr. Summer, and Mr. Medrano were involved in the operation far longer than Mr. Martinez.  Moreover, Mr. Martinez did oppose the enhancement on the ground that the evidence was too weak to support the 3B1.1(a).  This court overruled that objection. Even though it was counsel's decision to object on insufficiency grounds, counsel should have also objected on this equally valid ground.  When counsel failed to take the above-limned action, counsel's action fell below an objective standard of reasonableness.

Thus, counsel performed deficiently.

## 2. Prejudice

Furthermore, but for counsel's omission, there is a reasonable probability that the result of Mr. Martinez's sentencing hearing would have been different.

Obviously, it is virtually impossible to say what this Court would have done had this information been before it at the time of Mr. Martinez's sentencing hearing, yet several objective factors indicate that this Court may have slightly reduced

17

Mr. Martinez's sentence by a few year or may be even down to
his 240-moth mandatory minimum. For one, equally culpable co-
defendants entered into agreements with the government. These
co-defendants consisted of Alex Serato, Ricardo Medrano, and
Brian Summer. None of these equally, if not more, culpable
co-defendants received a § 3B1.1(a) enhancement. Despite the
manner in which they were sentence or the sentence they ultimately
received, neither Mr. Serato, Mr. Medrano, nor Mr. Summer's
plea agreements provided for a § 3B1.1(a) ehhancement. Counsel
should have used this fact. Next, section 3553(a)(6) allows
district courts to reduce defendants' sentences to avoid sentenc-
ing disparities for co-defendants. **Presley**, **supra**, **at 631** ("The
government concedes that the district court may consider a sen-
tencing disparity between similarly situated codefendant...."). 
Again, counsel should have used this. Finally, in **Graham**, a
district court had granted a defendant, who had went to trial
a two-level downward departure where her equally culpable co-
defendants'amount of loss was substantially lower than hers.
See **Graham**, **supra**, **at 11-12**. Prior to **Booker** rendering the
guidelines advisory, it was apparently more difficult to obtain
a downward departure than it is to obtain a downward variance.
Thus, counsel should have relied on **Graham** or a similar case
to request a lower sentence for Mr. Martinez.

Therefore, counsel's performance prejudiced Mr. Martinez;
hence, counsel rendered IAC when counsel failed to object to

18

the PSI Report's recommendation of a § 3B1.1(a) enhancement or to request a downward variance on the above-described basis.

## IV.  CONCLUSION

**WHEREFORE,** John A. Martinez prays that this Honorable Court grants him an evidentiary hearing, vacate his convictions, reduce his sentence, or any other relief it deems just and proper.

Dated: 9 June 2010

Respectfully submitted,

John A. Martinez
Reg. No. 43439-060
F.C.I. Gilmer
P.O. Box 6000
Glenville, WV 26351-6000

## CERTIFICATE OF SERVICE

**THE UNDERSIGNED,** John A. Martinez, hereby certify that on 10 June 2010 he placed a TRUE COPY of this Memorandum in F.C.I. Gilmer's legal mail box with first-class postage affixed addressed to the following:

Office of the U.S. Attorney
Four Seagate Plaza
Toledo, OH 43604

Dated: 10 June 2010.

John A. Martinez

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
TOLEDO DIVISION


JOHN A. MARTINEZ,
      Movant,


v.                              CIVIL NO. 3:10CV410
                                [CRIMINAL NO. 3:05CR781-01]

UNITED STATES OF AMERICA,
      Respondent.
_____/HONORABLE DAVID A. KATZ


JOHN A. MARTINEZ'S SWORN AFFIDAVIT


THE UNDERSIGNED, John A. Martinez, hereby swears that the following statements are true and correct:

1) A day or two prior to the commencement of my trial, my father, my brother, and I (the Martinezes) arrived in court for our final pre-trial hearing. During this hearing, the government extended a last second plea offer to us. My brother and I were going to receive 15 years, and my father was going to receive 12 years.

2) My lawyer conveyed this offer to me and, then, he asked me did I want to accept the offer. My brother and I talked between ourselves in English and agreed to accept the offer; however, my father was not interested in the offer. My father's lawyer told him that if he was convicted at trial, the government was going to give him a life sentence.

3) My father, my brother, and I then had a conversation amongst ourselves in English about the offer. My father would not change his mind; he told us that he was too old already and he did not believe he was involved in the conspiracy. He did advise us to accept the plea.

4) My brother and I informed our lawyers of our decision, and my father informed his lawyer of his decision.

5)  We all returned to the courtroom and made our respective decisions known.  As soon as Joseph Wilson learned of my father's decision, he said that either all of us had to plead guilty or the offer was off.

6)  Ultimately, the government unilaterally withdrew its plea offer from me due to my father's refusal to plead guilty.

Further, the affiant sayeth not.

The foregoing statements are made upon information, memory, and belief under the penalty of perjury.  Title 28 U.S.C.S § 1746

Dated: 10 June 2010

Affiant,

John A Martinez